Argued and submitted September 7, 1993, on appeal, reversed and remanded in part with instructions, otherwise affirmed; affirmed on cross-appeal February 16, 1994

CADLE COMPANY II,
an Oregon corporation,
*Respondent - Cross-Appellant,*

*v.*

Armond SCHELLMAN,
*Defendant,*

*and*

Mark SCHELLMAN,
*Appellant - Cross-Respondent.*

(9010-06618; CA A74069)

868 P2d 773

Michael J. Morris argued the cause for appellant - cross-respondent. With him on the briefs was Bennett & Hartman.

George W. Kelly argued the cause for respondent - cross-appellant. With him on the briefs were Richard M. Layne and Michael W. Peterkin.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

EDMONDS, J.

## EDMONDS, J.

Defendant Mark Schellman[1] appeals and plaintiff cross-appeals from a judgment subjecting a houseboat and other equipment to execution on a prior judgment. We reverse in part on the appeal and affirm on the cross-appeal.

This case involves the application of the Fraudulent Transfers and Conveyances Act (Act). ORS 95.200 *et seq.* We review *de novo, Allen v. Meinig*, 109 Or App 341, 819 P2d 744 (1991), *rev den* 313 Or 209 (1992), and make the following findings. Defendant's father, Armond, was president of and a major shareholder in Tantra, a corporation formed to engage in bridge demolition. In 1984, at Armond's insistence, Tantra formed TOI, Inc. (TOI), a wholly owned subsidiary of Tantra, to perform non-explosive demolition projects.[2] In 1985, Tantra was involved in a demolition project that resulted in a loss of $250,000 and an unpaid tax obligation of $100,000. Also, in July, 1985, one of Tantra's creditors obtained a judgment against Tantra and Armond for $83,273. Plaintiff is the assignee of that judgment.

Defendant was an employee of Tantra until September, 1985, when he quit because of Tantra's financial difficulties. At the time he resigned, Tantra owed him $5,000 in unpaid salary. On March 3, 1986, Tantra transferred all of TOI's stock to defendant, purportedly in lieu of the unpaid salary. At that time, Armond and defendant knew that Tantra was insolvent, that TOI had no assets and that TOI had a pending claim against it for $125,000 owed to a construction firm that had hired TOI to complete a pier demolition project. On March 10, 1986, Tantra transferred to TOI, free of liens, equipment valued by Tantra at $103,128. In addition, it transferred to TOI all rights to potential subcontracts on which Tantra had submitted bids. The stated consideration for the transfer was that TOI would assume responsibility for all outstanding bills associated with the bids and all costs of completion if the bids were accepted.

---

[1] Defendant's father, Armond Schellman, is also a named defendant but is not a party to this appeal. We will refer to Mark Schellman as the defendant.

[2] Although the parties agree that TOI was a wholly owned subsidiary of Tantra, the corporate minutes indicate that, at the time of incorporation, Tantra owned only 80% of the TOI stock and another individual owned 20% of the TOI stock.

Thereafter, TOI continued to do business. In October, 1986, defendant, individually, entered into a contract for the purchase of a houseboat.[3] However, TOI made all of the payments on the houseboat. In 1988, the seller transferred title to the houseboat to defendant in his individual capacity when the contract was paid off. In 1990, TOI was dissolved. Thereafter, plaintiff filed the complaint in this case against defendant and Armond, alleging fraudulent transfers of the TOI stock by Tantra to defendant, and of the equipment and bids by Tantra to TOI.

The trial court found:

"The agreement by T.O.I. to be responsible for all costs of contract completion * * * was at best grossly inadequate consideration for the transfer. The transfer of stock, assets and contract rights from Tantra to T.O.I. must be viewed as part of the same transaction. Otherwise, the transfers make no sense. The court finds that the transfers were part of a scheme to shift all of the assets of Tantra out of the reach of its creditors so that [Armond] and [defendant] could carry on their business with assets of Tantra free from the interest of its creditors."

It entered a judgment that set aside as fraudulent the transfers from Tantra to defendant,[4] and from Tantra to TOI. Also, it declared that all assets transferred by Tantra to TOI are subject to execution and sale, and it held that TOI was the beneficial owner of the houseboat and that plaintiff's judgment attached to the houseboat. The judgment "forecloses" all of defendant's title and interest in the houseboat, orders that it be sold by the sheriff and that the proceeds of the sale be applied in satisfaction of plaintiff's judgment against Tantra.

■ On appeal, defendant first assigns error to the trial court's denial of his motion to dismiss at the close of plaintiff's case. ORCP 54B(2). We treat the denial of a motion to

---

[3] Defendant and Armond began renting the houseboat in August, 1985, from the seller. The houseboat was used as an office for Tantra and TOI, and as a residence for defendant and Armond. Defendant does not contend that TOI's payments for the houseboat constituted rent for TOI's use of the houseboat as an office.

[4] Plaintiff's amended complaint did not request that the transfer of stock be set aside. Defendant does not raise that issue as an assignment of error, and therefore, we do not address it.

dismiss as one for a directed verdict and consider the whole record, including evidence introduced by defendant, to determine whether plaintiff offered evidence of a *prima facie* case under ORS 95.240(1). *See Scholes v. Sipco Services & Marine, Inc.*, 103 Or App 503, 506, 798 P2d 694 (1990).

■ ORS 95.240(1) provides:

> "A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor becomes insolvent as a result of the transfer or obligation."

The only asset that was transferred to defendant by Tantra is the stock in TOI. Defendant argues that at the time of the transfer, the TOI stock had no value.

Plaintiff's claim against Tantra arose before Tantra transferred the TOI stock to defendant and the equipment to TOI. There is evidence that the transfer was made as part of a scheme to shift all of the assets from Tantra out of the reach of its creditors so that Armond and defendant could carry on business, and that Tantra was insolvent at the time of the transfer. Although there is evidence that Tantra owed defendant wages, that evidence merely contradicts plaintiff's evidence that the stock was transferred as part of the transfer of the equipment to TOI, a transfer that the trial court also found fraudulent. Moreover, the stated considerations for the transfer of the equipment, the stock, and the right to the bids, if accepted, are suspect when the values of the assets are compared to the amounts of the stated contributions. Because they were issues of fact as to whether the requirements of ORS 95.240(1) were met, the trial court did not err in denying defendant's motion to dismiss. Defendant's subsequent assignments of error do not attack the ruling about the stock transfer. We affirm the portion of the judgment that voids the transfer of the TOI stock. Tantra is the legal owner of the TOI stock.

■ In his next assignment of error, defendant argues that "[t]he trial court erred in concluding that the houseboat was subject to execution by plaintiff." First, defendant argues

that he is the owner of the houseboat, not TOI. Although defendant entered into the contract to purchase the houseboat, TOI made all of the payments on the contract. Defendant does not claim that there were wages owed to him at the time TOI made those payments, and there is evidence that the payments were not repayments of loans made by defendant to TOI. For instance, defendant was unable to support his contentions by any documentation. Based on our review of the evidence, we agree with the trial court that TOI is the beneficial owner of the houseboat, and that defendant holds the title to the houseboat in trust for its benefit.

■  The result of that holding is that defendant makes his assignment of error as constructive trustee on behalf of TOI, a non-party, and that the assignment is referable only to the houseboat.[5] Defendant argues that, even if there was a transfer of assets from Tantra to TOI that was voidable, the houseboat was not one of those assets, and the court was without authority to order that it be the subject of an execution. Plaintiff argues that it can execute on any asset of TOI, because once a fraudulent transfer occurs, all of the property of the transferee is subject to a judgment. The resolution of the issue depends on the meaning of ORS 95.260[6] and ORS 95.270.[7]

---

[5] The record indicates that TOI is a Washington corporation. RCW 23B.14.050 provides that a dissolved corporation continues its corporate existence after dissolution and that a dissolution does not transfer title to its property. *See* RCW 23B.14.050(2)(a); *see also* ORS 60.637(2)(a). Whether the judgment is valid as against TOI regarding the transfer of the equipment is not properly before us, and we do not decide that issue. We do not understand plaintiff's claim to be a claim seeking to pierce TOI's corporate veil. As to the necessity of TOI being a party to such a claim, *see Erickson v. Atkinson*, 107 Or App 262, 812 P2d 2, *rev den* 312 Or 80 (1991).

[6] ORS 95.260 provides:

"(1) In any action for relief against a transfer or obligation under ORS 95.200 to 95.310, a creditor, subject to the limitations provided in ORS 95.270, may obtain:

"(a) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim.

"(b) An attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by any applicable provision of any other statute or the Oregon Rules of Civil Procedure.

"(c) Subject to applicable principles of equity and in accordance with applicable rules of civil procedure:

"(A) An injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;

ORS 95.260(1) provides for prejudgment and post-judgment remedies against the debtor and the transferee. ORS 95.260(2) provides for an *in rem* judgment against the transferred asset or its proceeds: "* * * the creditor may levy execution on the asset transferred or its proceeds." Unlike subsection (1), it does not require that there be a judgment against the transferee, but only against the debtor. The provision allows the creditor to obtain a court order that permits a levy against a specific transferred asset or proceeds of a transferred asset. ORS 95.270(2) authorizes an *in personam* judgment against a transferee who has not taken in good faith and for equivalent value.

■ To begin our analysis, we note that words in a statute are given their plain, natural and ordinary meaning and are to be considered in context with other provisions of the same statute and the entire statutory scheme. Statutes about the same subject are to be read so as to give effect to all, and specific language will control over general language. ORS 174.030. *See also PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993). Under ORS 95.260(1), TOI, the transferee, is not a party, so no relief is available against it. Defendant is a trustee of the houseboat, but not the transferee. Therefore, subsection (1) is inapplicable. ORS 95.270(2) is inapplicable as against defendant for the same reason. Only ORS 95.260(2), which authorizes *in rem* relief, may apply.

The houseboat is not a "transferred asset" from Tantra to TOI. Thus, we must decide whether the houseboat

---

"(B) Appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or

"(C) Any other relief the circumstances may require.

"(2) If a creditor has obtained a judgment on a claim against the debtor and if the court so orders, the creditor may levy execution on the asset transferred or its proceeds."

[7] ORS 95.270(2) provides:

"Except as otherwise provided in this section, to the extent a transfer is voidable in an action by a creditor under ORS 95.260(1)(a), the creditor may recover judgment for the value of the asset transferred, as adjusted under subsection (3) of this section, or the amount necessary to satisfy the creditor's claim, whichever is less. The judgment may be entered against:

"(a) The first transferee of the asset or the person for whose benefit the transfer was made; or

"(b) Any subsequent transferee."

is a "proceed" of the equipment and the right to the bids transferred by Tantra to TOI. The word is to be given its ordinary meaning. A proceed of a chattel means a sum, amount, or value of property sold or converted into money or other property. *See Blackford v. Boak*, 73 Or 61, 65, 143 P 1136 (1914). There is no evidence that any of the equipment transferred by Tantra to TOI was sold or the bids assigned and the consideration therefrom used to make the payments on the houseboat contract. The assignment of the bids constitutes an assignment of a contractual interest contingent on the bids being accepted. The most that can be said from the evidence is that after the bids were accepted, the transferred equipment may have been used along with the labor of TOI employees to generate monies that paid off the houseboat contract.

■ ■ The nature of an *in rem* proceeding is that the proceeding is directly against specific property. *Linn County v. Rozelle*, 177 Or 245, 258, 162 P2d 150 (1945). We hold that the statute does not contemplate a levy on the houseboat under those circumstances, because the houseboat is not a direct proceed of the transferred assets. It was purchased from income earned by the combined use of the transferred asset and other non-transferred elements. Because the houseboat is neither an asset that was transferred from Tantra to TOI, nor a proceed of the assets that were transferred within the meaning of the statute, the trial court erred in ruling that the houseboat was subject to execution. Although the houseboat is the property of TOI, it is not subject to a judgment under ORS 95.260(2) in this proceeding. Because of this resolution, we do not address defendant's remaining assignment of error.

■ On cross-appeal, plaintiff argues that the trial court erred when it refused to grant a personal judgment against defendant for the value of the houseboat. Defendant is not the judgment debtor nor is he a transferee insofar as the houseboat is concerned. Consequently, the court had no authority under ORS 95.260 or ORS 95.270 to award a personal judgment for the value of the houseboat against him.

On appeal, reversed and remanded with instructions to enter modified judgment deleting paragraphs 3 and 6 from the May 12, 1992, judgment, deleting the phrase "and the

floating home," from paragraph 5 of the May 12, 1992, judgment, deleting the second sentence of paragraph 2 from the June 15, 1992, amended judgment, and otherwise affirmed; affirmed on cross-appeal.